*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARMAD SAMEER-QARYAQOS ASRAEEL,

Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN, FARQAD FARIS
POLUS, and JILL MARIE GERLACH,

Defendants-Appellees.

UNPUBLISHED
October 1, 2019

No. 344022
Macomb Circuit Court
LC No. 2017-000484-NF

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

This appeal primarily involves two orders of the trial court. The initial order was entered on April 23, 2018, and granted summary disposition in favor of defendant Farm Bureau General Insurance Company of Michigan (Farm Bureau), while denying summary disposition to defendant Jill Marie Gerlach. On May 15, 2018, the trial court entered an order that vacated the grant of summary disposition to Farm Bureau (because the claim against Farm Bureau previously had been dismissed without prejudice) but granted summary disposition in favor of Gerlach and defendant Farqad Faris Polus because the court determined that there was no factual question that plaintiff had not suffered threshold injury under Michigan's no-fault act, MCL 500.3101 *et seq*. Plaintiff appeals as of right from this final order. Because there is a question of fact whether plaintiff has suffered a serious impairment of a body function, we reverse the grant of summary disposition in favor of Gerlach and Polus and remand.

## I. BACKGROUND

This action arises out of a motor-vehicle accident that occurred on July 4, 2016. Plaintiff was a passenger in a car driven by defendant Polus. Polus was driving eastbound on 18 Mile Road, when his vehicle was struck by defendant Gerlach's vehicle at the intersection of 18 Mile Road and Van Dyke Avenue. While the police reports indicated that Polus had run the red light, Polus testified at his deposition that he only proceeded on a green light. Plaintiff broke his clavicle in the accident, and the injury required surgery to repair.

Plaintiff filed a complaint against Farm Bureau, Polus, and Gerlach. Under Count I of the complaint, plaintiff alleged that he was entitled to personal protection insurance (PIP) benefits from Farm Bureau because he was a passenger in Polus's car, which Farm Bureau insured, at the time of the accident.[1] Under Count II and Count III of the complaint, plaintiff claimed that he sustained bodily injuries as a result of Polus's and Gerlach's negligent operation of their respective vehicles. Plaintiff alleged that Polus's and Gerlach's negligence was the direct and proximate cause of his injuries, which resulted in the serious impairment of a body function. Under Count IV, plaintiff raised a claim for underinsured and uninsured motorist (UIM) coverage against Farm Bureau.

Following discovery, Gerlach filed a motion for summary disposition and argued that she could not be liable for any damages because she was not responsible for the accident. In support of her motion, in addition to her deposition testimony in which Gerlach stated that the light was green for her, she attached a copy of police reports, which stated that other witnesses saw Polus run the red light at the intersection. In response, plaintiff argued that the police reports were inadmissible hearsay. Plaintiff further provided the deposition testimony of Polus, who testified that he had been stopped at the intersection for a red light and only entered the intersection after it changed to green.

Farm Bureau thereafter filed a motion for summary disposition with regard to plaintiff's claim for UIM benefits. Farm Bureau argued that plaintiff could not establish that he suffered a serious impairment of a body function that affected his ability to lead his normal life. Polus filed a concurrence, in which he "join[ed] in the relief sought by Defendant Farm Bureau General Insurance Company in its motion." In response to Farm Bureau's motion, plaintiff argued that he had suffered a serious impairment of a body function as a result of the car accident. Plaintiff contended that he demonstrated the existence of such a threshold injury by not being able to work the same hours as a truck driver as before the accident and not being able to partake in physical and recreational activities that he used to enjoy.

On April 20, 2018, while the motions for summary disposition were still pending, the trial court entered a stipulated order dismissing without prejudice plaintiff's remaining claims against Farm Bureau for UIM benefits. However, on April 23, 2018, apparently unaware it had already dismissed the UIM claims against Farm Bureau, the trial court entered an opinion and order denying Gerlach's motion for partial summary disposition and granting Farm Bureau's motion for summary disposition.

With regard to Gerlach's motion for partial summary disposition, the trial court ruled that Gerlach could not rely on a police report in support of her argument that she was not responsible for the accident because police reports constitute inadmissible hearsay. The trial court further ruled that, even if the witness statements contained in the reports were considered, because Polus

---

[1] This count later was dismissed via stipulated order, so this appeal does not involve the claim for PIP benefits.

emphatically testified that he did not run a red light, this would create a question of fact for the jury to resolve, which precluded the grant of summary disposition.

With respect to Farm Bureau's motion for summary disposition, the trial court noted that the parties did not dispute that plaintiff had suffered a broken clavicle in the car accident and that the injury required surgery. The trial court found that the parties only disagreed regarding whether the injury affected plaintiff's ability to lead a normal life. Regarding the effect the injury had on plaintiff's ability to work, the trial court acknowledged that plaintiff had to take more frequent breaks after he was injured but nonetheless observed that plaintiff still worked the same amount of hours after the accident as he worked before he was injured. Regarding plaintiff's personal life and ability to engage in recreational activities, the trial court stated that plaintiff's testimony did not show that he was unable to "enjoy hobbies in the same manner that he did before the accident." The trial court therefore concluded that there was "no clear, unequivocal evidence from which a reasonable factfinder could conclude that [plaintiff's] injury affected his ability to lead his normal life." Consequently, the trial court entered an order purporting to grant Farm Bureau's motion for summary disposition of plaintiff's claim for UIM benefits.

Farm Bureau thereafter moved the trial court to vacate its April 20, 2018 stipulated order of dismissal. Farm Bureau asked the trial court to clarify that the dismissal of plaintiff's UIM claim was with prejudice, given the court's subsequent determination that plaintiff did not suffer a threshold injury.

Plaintiff, on the other hand, moved the trial court to vacate its April 23, 2018 order granting summary disposition to Farm Bureau, arguing that once the UIM claim against Farm Bureau had been dismissed by stipulation on April 20, there was no pending claim before the court. In other words, plaintiff argued that Farm Bureau's then-pending motion for summary disposition on the UIM claim had been rendered moot.

The trial court agreed with plaintiff that the April 23 order could not affect plaintiff's UIM claim against Farm Bureau because that claim was no longer before the trial court. However, the court ruled that for the reasons described in the April 23 order—the failure to prove that plaintiff had suffered a serious impairment of a body function—summary disposition nonetheless was warranted on plaintiff's claims against Polus and Gerlach.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred in granting summary disposition in favor of Polus and Gerlach on the basis that there was no evidence to show that plaintiff had suffered a serious impairment of a body function. In that regard, plaintiff argues at the outset that reversal is warranted because neither Polus nor Gerlach had moved for summary disposition on the issue of whether plaintiff had suffered a threshold injury under the no-fault act. But MCR 2.116(I)(1) expressly states that "the court shall render judgment without delay" "if the affidavits or other proofs show that there is no genuine issue of material fact." MCR 2.116(I)(1) therefore grants a trial court the "authority to grant summary disposition sua sponte." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Indeed, not only is a court permitted to grant summary disposition in these instances, the word "shall" in the court rule makes this a

*mandatory* action once the court has determined that a party is entitled to judgment and there is no genuine issue of material fact. *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006); see also *In re Forfeiture of Bail Bond*, 496 Mich 320, 327-328; 852 NW2d 747 (2014) (stating that the word "shall" is a mandatory term, instead of a permissive one). Accordingly, plaintiff cannot show how the trial court erred when it chose to sua sponte address summary disposition as to plaintiff's negligence claims against Gerlach and Polus, even though they did not move for summary disposition on this ground.[2]  However, although the trial court had the *authority* to rule sua sponte in favor of Gerlach and Polus, as described below, the court erred when it ultimately ruled in their favor.

This Court reviews the grant or denial of a motion for summary disposition de novo. *Value, Inc v Dep't of Treasury*, 320 Mich App 571, 576; 907 NW2d 872 (2017). "A motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). A genuine issue of material fact " 'exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017) (citation omitted).

Under MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). A serious impairment of a body function is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

Whether an individual has sustained a serious impairment of a body function is a question of law that is decided by the trial court if "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function." MCL 500.3135(2)(a)(*i*) and (*ii*). In other words, the trial court is required first to "determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010). "If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court." *Id*.

The parties do not dispute that plaintiff had suffered a broken clavicle, which required surgery, and that he was unable to work for six weeks following surgery. Thus, there is no

---

[2] Because the trial court could sua sponte decide the issue related to any party, including Polus, we need not consider plaintiff's argument that Polus's "concurrence" with Farm Bureau's motion for summary disposition was inadequate to raise the issue of summary disposition before the trial court as to the negligence claim against Polus.

factual dispute regarding the nature and extent of plaintiff's injuries. Since no factual dispute existed, the trial court was permitted to determine whether plaintiff's injury met the appropriate threshold as a matter of law. *Id*. In order for a plaintiff to prove that he or she sustained a serious impairment of a body function, the plaintiff must demonstrate the existence of

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*Id*.]

"The serious impairment analysis is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis." *Id*.

The parties' dispute focuses mainly on the third requirement: whether plaintiff's injury affected his general ability to lead his normal life. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. at 202. Plaintiff stated that after the car accident, he was completely unable to work for approximately six weeks. The injury affected plaintiff's ability to do his job as a long-haul truck driver after he returned to work. Before plaintiff was injured, he was able to drive his truck for a maximum duration of 7½ hours without stopping, but after the accident, he was only able to drive for a maximum of three hours without a break. Plaintiff previously enjoyed lifting weights and playing soccer and volleyball, but he testified that he no longer could engage in those activities.

The trial court opined that, although plaintiff was unable to work for approximately six weeks after the accident, he was "on the road for work for approximately the same amount of time as he was before the accident" at the time the trial court delivered its opinion. The trial court's analysis overlooks the fact that plaintiff had to alter his work habits as a result of pain and discomfort caused by the injury. But more importantly, the trial court concluded that "there is no clear, unequivocal evidence" regarding plaintiff's recreational hobbies, including sports and exercise, that would allow a factfinder to find that plaintiff was unable to "enjoy hobbies in the same manner that he did before the accident." We disagree with this analysis. Plaintiff explicitly testified that he no longer is able to lift weights for exercise, which was an activity that he enjoyed, and that he is limited to walking or running on occasion for exercise. Plaintiff stated that he previously enjoyed playing soccer and volleyball with friends but that he is no longer able to play either sport.[3]

---

[3] Plaintiff also asserts that the trial court's use of the phrase "no clear, unequivocal evidence" demonstrates an incorrect standard in evaluating motions for summary disposition, as we must view the facts in the light most favorable to the nonmoving party. However, because our review is de novo, with no deference to the trial court's determinations or processes, we need not address if the court used an erroneous standard.

The trial court's opinion suggests that it believed that in order for plaintiff to demonstrate that he sustained a serious impairment of a body function, plaintiff was required to demonstrate an injury which would be long-lasting, if not permanent, and that the injury also would have to be exceedingly damaging to plaintiff's ability to lead his daily life. To the contrary, our Supreme Court in *McCormick*, 487 Mich at 202, stated that MCL 500.3135 "merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed." Only *some* of a person's ability to live in their "normal manner of living" must be affected to meet the threshold requirements of MCL 500.3135. *Id*. at 202-203. "[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. Additionally, an injury does not need to lead to a permanent impairment; indeed, MCL 500.3135 "does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id*. From the evidence submitted, it is clear that plaintiff's injuries were not permanent and did not destroy his ability to lead his normal life. However, viewed in the light most favorable to him, plaintiff clearly presented evidence that his general ability to live, work, and engage in activities that he previously enjoyed in his normal life have been affected by his injury. Therefore, applying the summary disposition standard, we hold that plaintiff has established a question of fact regarding whether his injuries affected his ability to lead his normal life.

Consequently, we reverse the grant of summary disposition in favor of Polus and Gerlach.[4]

We reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

---

[4] Because we have concluded that summary disposition was erroneously granted in favor of Polus and Gerlach because there was a question of fact regarding whether plaintiff had suffered a serious impairment of a body function, we need not consider plaintiff's other arguments for reversal, including that the trial court erred when it failed to rule on whether plaintiff had met the different threshold injury requirement under MCL 500.3135(1) by suffering a permanent serious disfigurement. Because our decision thus does not "dispose of the entire action or grant all the relief demanded," it must proceed to final judgment before the trial court, including the allegation regarding permanent serious disfigurement. MCR 2.116(J)(1).