TIMMERMAN *v.* HARTFORD ACCIDENT & INDEMNITY CO.

1. Principal and Surety—Official Bonds Not Effective Until Accepted.

    Statutory or official bonds made payable to the State cannot become effective until they are accepted by those duly authorized to accept them.

2. Same—Bond of Dealer in Stocks and Securities Not Effective Where Never Accepted.

    A bond issued, by a surety company to one who represented that he had applied for a license as a dealer in stocks and securities, which was never accepted by the securities commission because no such application was in fact ever made, never became effective and created no obligation.

3. Same — Recital Required by Statute Constituted No Estoppel.

    The recital in a bond that the principal had applied for a license as a dealer in stocks and securities, being a statutory requirement, constituted no estoppel to an action on the bond, although in fact no such application was ever made.

4. Same—Surety Liable to Same Extent as Principal by Force of Bond.

    The surety in a bond is liable to the same extent that the principal is liable by force of the bond.

5. Same—Surety Not Liable For Fraudulent Use of Bond.

    Where a bond purporting to respond for the misconduct of a licensed dealer in stocks and securities never became effective, because the principal was never licensed, the surety company was not liable for the principal's fraudulent use of the bond in perpetrating a fraud.

6. Same—Surety Guilty of No Wrong in Delivering Bond.

    Nor was the surety company guilty of any wrong or even want of ordinary care in delivering the bond to the principal to carry out the statutory purpose of its procurement.

7. SAME—OFFICIAL BOND MAY BE DELIVERED TO CARRY OUT STATU-
TORY PURPOSE WITHOUT INCURRING LIABILITY FOR FRAUDULENT
USE OF IT.

    Bonding and surety companies may sign and turn over to
a principal a bond to fill a statutory purpose, requiring
official approval, without being liable for a fraudulent use
of the bond by the principal.

Error to Ottawa; Cross (Orien S.), J. Submitted
April 4, 1928. (Docket No. 31, Calendar No. 33,628.)
Decided July 24, 1928.

Assumpsit by Benjamin Timmerman and another
against the Hartford Accident & Indemnity Company
on a bond. Judgment for plaintiffs on a directed
verdict. Defendant brings error. Reversed, and
judgment ordered entered for defendant.

*J. T. & T. F. McAllister*, for appellant.

*Fred T. Miles* and *Dilley, Souter & Dilley*, for ap-
pellees.

WIEST, J. In 1926, Benjamin and Jennie Timmer-
man, husband and wife, farmers, residing in Fillmore
township, Allegan county, owned certificates for 335
shares of stock of the Woodley Petroleum Company,
of the market value of $9 per share. Richard Bult-
man, an agent and salesman in the employ of defend-
ant Henry L. Doherty & Company, but not then known
to plaintiffs to be such, solicited that he be intrusted
with the sale of the certificates, and, October 4, 1926,
upon his representation that he was a duly licensed
dealer, and his exhibition to plaintiffs of a bond in
the sum of $10,000, signed by defendant Hartford
Accident & Indemnity Company, as surety, reciting
that Bultman had made application to the securities
commission of the State of Michigan for a dealer's

license to engage in the business of dealing in securities and selling and soliciting the sale thereof in the State of Michigan, indorsed the certificates in blank and delivered them to Bultman to sell at $10 per share. At that time Bultman was not a licensed dealer and fraudulently employed the bond, with its recitals, to obtain the certificates. Bultman sold the certificates, paid plaintiffs $350 and gave them a check for $2,700 upon a bank in which he had no funds. This suit was brought against Bultman, Henry L. Doherty & Company, the Fidelity & Deposit Company of Maryland, surety on the Doherty company bond, and the Hartford Accident & Indemnity Company. In the declaration plaintiffs waived the tort of Bultman and sought recovery against defendants in assumpsit. Defendant Hartford Accident & Indemnity Company gave notice, under plea of the general issue, that the bond it signed was never of any force or effect because Bultman was not granted a dealer's license and the bond was not filed with, or approved by the securities commission, and without license of Bultman, and the acceptance of the bond, the instrument could not and did not become an executed bond.

At the trial verdict was directed in favor of Henry L. Doherty & Company and its surety the Fidelity & Deposit Company of Maryland, and a verdict directed against defendant Hartford Accident & Indemnity Company, for the sum of $2,846.25. Bultman was beyond the jurisdiction of the court, and, therefore, not served with process. The Hartford company reviews by writ of error, asserting no liability to plaintiffs.

The circuit judge, in directing the verdict, stated:

"The proof, in so far as the defendant Hartford Accident & Indemnity Company is concerned, the proofs show that they executed a bond in the sum of $10,000 and it was delivered to Mr. Bultman. Mr. Bultman

had that bond in his possession, after it was executed and delivered, and it recites in the bond itself that he was duly authorized as a dealer to deal in securities under the statute, so to my mind the company is bound by the recitals in that bond, which they made. He had that bond and showed it to these people and led them to believe that the application had been duly granted and all that, and in my opinion the company is bound by the fact that they executed this bond and placed it in his hands, and allowed him to use it to show people that he was authorized as a dealer, and that they bonded him as a dealer."

The trial judge was in error in not granting the motion of the Hartford company for a verdict in its favor and in rendering judgment against it. The bond was never operative and there was no liability thereunder on the part of the surety.

It is well settled, as stated in 9 C. J. p. 19:

"Statutory or official bonds made payable to the State cannot become effective until they are accepted by those duly authorized to accept them."

The bond was a fidelity one, exacted by statute of licensed dealers in stocks and securities, the State was obligee, and, to make it operative, required acceptance thereof by the commission upon granting a license to the principal named therein. Bultman did not apply for a license, and, of course, none was granted to him; the subject-matter of the bond never existed and there was not and could not be any acceptance of the bond by the commission. Conceding that had Bultman been licensed and the bond filed and approved the plaintiffs could maintain an action thereon, it does not follow that when he was not licensed, and the bond was not filed and accepted, the surety is liable for his fraudulent employment of the bond. To so hold would exact a liability never undertaken, overlook entirely the subject-matter of the bond, ignore the statute regulating its purpose, fixed obligation and official acceptance,

and subject sureties to a hazard not assumed and not within legal contemplation. Many bonds must be signed by principal and surety before official action can be had and, to hold that where the law exacts a bond as a condition of official action in granting a license, if the surety signs and turns the bond over to the principal to deliver to the public officials in fulfillment of the statutory purpose, and the principal employs the bond to perpetrate a fraud, the bond is operative and the surety liable, without any part in the fraud, would constitute it an undertaking foreign to its intents and office.

The bond in suit was not a common-law bond, but one required by statute in case of license granted to the principal, and, in case no such license was granted, was wholly inoperative. The surety executed the bond to perform a statutory indemnity purpose, and, in fact and law, it was not operative except in furtherance of the statutory purpose. See *Howard* v. *Hess,* 63 Mich. 725. The recital in the bond that the principal had applied for a license was a statutory requirement and constituted no estoppel. If this bond had been filed with the commission it would have been a nullity because no license was granted. The bond never served the purpose for which it was signed by the surety, and never became an obligation upon which the surety could be held for any act of the principal. There was no breach of the bond, but there was a fraud perpetrated by Bultman by means of misrepresentation of its legal effect and the ignorance of plaintiffs. Remedy for such fraud is not an action on the bond. It is familiar law that the surety in a bond is liable to the same extent that the principal is liable *by force of the bond.* If the principal's liability arises outside of bonded conduct, fidelity obligation or duty, then the surety is not liable for such by force of the bond. The bond, at the time Bultman employed it for a

fraudulent purpose, was no more than an offer or proposal of obligation by the surety in case Bultman was licensed. To constitute it an executed bond required action by the commission, both as to license to Bultman and acceptance of the bond. The obligation imposed by the bond itself is to be measured by its terms. The surety assumed no obligation to respond for misconduct of Bultman except as a licensed dealer. The surety company was guilty of no wrong, or even want of ordinary care, in delivering the bond to the principal to carry out the statutory purpose of its procurement. The tort of Bultman in his misuse of the bond created no liability against the surety company under the bond nor did it render the surety company a joint tort feasor.

The declaration expressly waived any tort and sought recovery against the surety company upon its obligation of suretyship.

In *State* v. *Young,* 23 Minn. 551, it was stated:

"It is almost an elementary principle, laid down in all the books, that a bond is not 'executed' until it is delivered, for delivery is of the essence of a deed. It takes effect only from execution, on delivery, and, until delivery, it is not a contract, and is of no further value than the paper upon which it is written;" cited, with approval, in *Larson* v. *National Surety Co.,* 171 Minn. 455 (214 N. W. 507).

In case a bond is made payable to the State,—

"not to subserve any interest of the State, but as the trustee for others, * * * the bond does not become operative at all until it has been duly accepted by the State acting through its appropriate and duly accredited agents." Murfree on Official Bonds, § 46.

Bonding and surety companies may sign and turn over to a principal a bond to fill a statutory purpose, requiring official approval, without being liable for a fraudulent use of the bond by the principal.

The judgment is reversed, and the case remanded

to the circuit with direction to enter judgment in favor of the defendant Hartford Accident & Indemnity Company. The Hartford company will recover costs in this court against plaintiffs.

FEAD, C. J., and NORTH, FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.