571 N.W.2d 221 (1997)
225 Mich. App. 132
GRAND BLANC CEMENT PRODUCTS, INC., Plaintiff-Appellee/Cross-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant/Cross-Appellee, and
Artco Contracting, Inc., Defendant-Cross-Appellee, and
J. Moye Masonry, Inc., Defendant.
Docket No. 186152.
Court of Appeals of Michigan.
Submitted June 3, 1997, at Detroit.
Decided August 19, 1997, at 9:15 a.m.
Released for Publication November 6, 1997.
*223 Winegarden, Shedd, Haley, Lindholm & Robertson, P.L.C. by Alan F. Himelhoch, Flint, for Plaintiff-Appellee/Cross-Appellant.
Harvey, Kruse, Westen & Milan, P.C. by John F. Milan and Maurice A. Borden, Troy, for Insurance Company of North America and Artco, Contracting, Inc.
Before TAYLOR, P.J., and RICHARD ALLEN GRIFFIN and SAAD, JJ.
*222 RICHARD ALLEN GRIFFIN, Judge.
Defendant Insurance Company of North America (INA) appeals as of right a circuit court's order granting summary disposition in favor of plaintiff with respect to plaintiff's claim for recovery under a payment bond issued by INA pursuant to the public works bond act, M.C.L. § 129.201 et seq.; M.S.A. § 5.2321(1) et seq. (bond act). Plaintiff cross appeals the measure of damages and the trial court's order granting summary disposition in favor of defendant Artco Contracting, Inc. We affirm in part and reverse in part. We hold, inter alia, that subcontractors or materialmen that have failed to comply with M.C.L. § 129.207; M.S.A. § 5.2321(7) regarding a prior contract are not barred from protection under the bond act for labor and materials supplied pursuant to a second and independent contract for the same project if the general contractor is notified in accordance with the statute within thirty days of the claimant supplying labor or materials under the new contract.

I
Pursuant to the bond act, INA issued a payment bond to Artco, the general contractor on a construction project at Detroit Metropolitan Airport. On December 9, 1992, plaintiff began supplying masonry materials to defendant J. Moye Masonry, one of Artco's subcontractors. Because of nonpayment, plaintiff terminated its contract and stopped supplying Moye on March 1, 1993. After negotiations and an agreement for payment of the past due amount, a new supply contract was entered into on March 30, 1993. In what plaintiff has characterized as a "three-way contract,"[1] plaintiff agreed to supply materials in exchange for payment by *224 Artco in the form of checks issued jointly to plaintiff and Moye. Artco made payment for materials supplied by plaintiff by joint checks dated June 14 and July 2, 1993.
Earlier, on April 8, 1993, plaintiff notified Artco, Moye, and INA's local agent that it was relying on the payment bond as security for materials supplied under the second contract.[2] In August 1993, plaintiff terminated the second contract for nonpayment. Plaintiff notified defendants of the payment lapse in a letter dated August 13, 1993.
Plaintiff filed suit against INA under the payment bond. Plaintiff also sued Moye and Artco alleging contract-related claims as well as claims against Artco of negligence, promissory estoppel, and quantum meruit. The trial court entered a default judgment against Moye. The trial court also granted plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's claim against INA under the payment bond. The trial court ruled that plaintiff had satisfied M.C.L. § 129.207; M.S.A. § 5.2321(7) and perfected its claim under the bond act by notifying defendants within thirty days of when it began supplying materials under the second contract. The trial court also granted summary disposition in favor of Artco pursuant to MCR 2.116(C)(10) on the basis that plaintiff's judgment against INA fully satisfied plaintiff's claims against Artco.

II
On appeal, defendant INA contends that the trial court erred in granting summary disposition for plaintiff with respect to its payment bond claim. We disagree. We review the trial court's ruling on a motion for summary disposition pursuant to MCR 2.116(C)(10) de novo to determine whether the pleadings or the uncontroverted documentary evidence establish that defendant is entitled to judgment as a matter of law. MCR 2.116(I)(1); Kennedy v. Auto Club of Michigan, 215 Mich.App. 264, 266, 544 N.W.2d 750 (1996); Porter v. Royal Oak, 214 Mich.App. 478, 484, 542 N.W.2d 905 (1995). The existence of either circumstance merits summary disposition. Kennedy, supra at 266, 544 N.W.2d 750; Porter, supra at 484, 542 N.W.2d 905.

A
The issue on appeal is whether a claimant that had failed to satisfy M.C.L. § 129.207; M.S.A. § 5.2321(7) regarding an earlier contract to provide materials for a public construction project is afforded bond act protection for materials supplied pursuant to a second and independent contract regarding the same project when proper notification to the general contractor is given within thirty days of supplying materials under the new contract. In addressing this question of first impression, we are mindful that "`[t]he fundamental purpose of any rule of statutory construction, of course, is to assist the court in discovering and giving effect to the intent of the Legislature.'" Terzano v. Wayne Co., 216 Mich.App. 522, 526-527, 549 N.W.2d 606 (1996), quoting In re Certified Question, 433 Mich. 710, 722, 449 N.W.2d 660 (1989). Once discovered, the Legislature's intent must prevail over any existing rule of construction to the contrary. Ansell v. Dep't of Commerce (On Remand), 222 Mich.App. 347, 355, 564 N.W.2d 519 (1997); Terzano, supra at 527, 549 N.W.2d 606. Where reasonable minds may differ about the meaning of a statute, we look to the objective of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the Legislature's purpose. Ansell, supra at 355, 564 N.W.2d 519; Terzano, supra at 527, 549 N.W.2d 606; People v. Ward, 211 Mich.App. 489, 492, 536 N.W.2d 270 (1995). "[L]iteral constructions that produce unreasonable and unjust results that are inconsistent with the purpose of the act should be avoided." Rowell v. Security Steel Processing Co., 445 Mich. 347, 354, 518 N.W.2d 409 (1994); Salas v. Clements, 399 Mich. 103, 109, 247 N.W.2d 889 (1976).

B
The bond act requires principal contractors to provide performance bonds assuring payment to subcontractors and materialmen *225 furnishing supplies, labor, or equipment for public construction projects. W T Andrew Co., Inc. v. Mid-State Surety Corp., 450 Mich. 655, 658, 545 N.W.2d 351 (1996); Thomas Industries, Inc. v. C & L Electric, Inc., 216 Mich.App. 603, 606, 550 N.W.2d 558 (1996). To qualify for this statutory protection, M.C.L. § 129.207; M.S.A. § 5.2321(7) provides:
A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material ... served on the principal contractor a written notice, which shall inform the principal of the nature of the material being furnished or to be furnished, ... and identifying the party contracting for such... materials and the site for the ... delivery of such materials....
Although this notice requirement is strictly enforced, Tempco Heating & Cooling, Inc. v. A Rea Constr., Inc., 178 Mich.App. 181, 190, 443 N.W.2d 486 (1989); Charles W Anderson Co. v. Argonaut Ins. Co., 62 Mich.App. 650, 651-654, 233 N.W.2d 691 (1975), the remedial bond act is "liberally construed" to "protect contractors and materialmen in the public sector." W T Andrew Co, supra at 659, 545 N.W.2d 351; see also Adamo Equipment Rental Co. v. Mack Development Co., Inc., 122 Mich.App. 233, 236, 333 N.W.2d 40 (1982).
In drafting M.C.L. § 129.207, M.S.A. § 5.2321(7), the Legislature did not specify whether the thirty-day period is particular to each individual contract or whether it commences once and for all when the claimant begins performing its first contract to work for the public project. INA contends that, even if the initial contract to work on the public project is unrelated to the subsequent agreement, a subcontractor's or materialman's failure to serve notice within thirty days of beginning performance of the first contract precludes it from achieving bond act protection on any subsequent contract. Plaintiff argues that the thirty-day notice requirement is particular to each new endeavor to provide materials or labor to the project. Plaintiff thus contends that subcontractors or materialmen that fail to notify the principal regarding an earlier contract may gain bond act protection by notifying the principal within thirty days of providing materials or labor pursuant to a new or independent contract to work on the public project.

C
To ensure that "principal contractors [have] knowledge regarding any possible claims to which their bonds might later be subjected," M.C.L. § 129.207; M.S.A. § 5.2321(7) requires subcontractors and materialmen to "inform the principal of the nature of the material being furnished or to be furnished ... and identifying ... the site for... delivery of such materials." Pi-Con, Inc. v. A.J. Anderson Constr. Co., 435 Mich. 375, 383-384, 458 N.W.2d 639 (1990). Subcontractors or materialmen lacking a contractual relationship with the principal are accorded bond act protection only for "such material" or "such labor" that is identified in the notification. Absent this specificity requirement, the principal could be unaware of the nature of the materials or labor for which subcontractors or materialmen may claim recoupment under the payment bond. Thus, as opposed to simply requiring the claimant to notify the principal of its general affiliation with the project, subcontractors and materialmen must specifically identify the kind of materials or labor for which they seek bond act protection.
It follows from this particularity requirement that subcontractors and materialmen must notify the principal regarding each contractual arrangement for which they seek protection under the bond act. Otherwise, the notice requirement would lack consequence because the principal contractor could be subjected to bond act claims bearing little or no similarity to the labor or materials identified in the claimant's original notice. Indeed, the principal would hardly remain abreast of prospective claims on the surety if a claimant's notification regarding an agreement to supply bricks were deemed to cover a claimant's subsequent agreement to provide cement. However, the notice requirement applies only to new contracts that are *226 either distinct from or unrelated to an earlier contract. Subcontractors or materialmen engaged in ongoing relationships need not refile notice each time a new shipment is sent or where there is an immaterial modification in the original contractual arrangement.
Because each new contractual agreement requires independent, specific notice, there is no logical reason why defects in notice relative to earlier agreements should affect notice regarding subsequent contracts. In other words, there is no basis for making a subcontractor's or materialman's initial involvement in the project the bellwether for determining whether the principal is properly notified of an independent subsequent contract. Just as notifying the principal regarding a contract to supply bricks provides no warning of the subsequent arrangement to provide concrete, the failure to notify the principal about the supply of bricks should not affect the adequacy of notice regarding the supply of concrete. Thus, we construe the requirement that notice be within "30 days after furnishing the first of such material" as being specific to each agreement to provide materials or labor for the public project.
Additionally, permanently eliminating bond act protection for subcontractors and materialmen that failed to notify the principal regarding earlier contractual arrangements would violate public policy. Such a construction of the statute would return a class of subcontractors or materialmen on public projects to the plight they faced before the bond act, where they "were denied the security afforded when the identical work or materials were provided to the private sector." Adamo Equipment, supra at 236, 333 N.W.2d 40; see also Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools, 443 Mich. 176, 182, n. 11, 504 N.W.2d 635 (1993). This result would be discordant with the overall purpose of the bond act, which is to "protect contractors and materialmen in the public sector to ensure that they do not suffer injury when other contractors default on their obligations." W T Andrew Co, supra at 659, 545 N.W.2d 351; see also Adamo Equipment, supra at 236, 333 N.W.2d 40; Milbrand Co. v. Dep't of Social Services, 117 Mich.App. 437, 440, 324 N.W.2d 41 (1982). Denying protection under these circumstances would discourage previously unprotected subcontractors or materialmen from bidding on or accepting subsequent contracts to perform more substantial work on public projects. The effect would likely be to raise public construction costs by reducing the field of subcontractors and materialmen willing to bid on new contracts.
For these reasons and consistent with the language and purpose of the bond act, we hold that the thirty-day notice period is specific to each new and independent contractual arrangement. Thus, even if a subcontractor or materialman failed to protect itself under an earlier agreement regarding a public project, the subcontractor or materialman may still protect itself under a new and independent agreement by notifying the principal contractor within thirty days of commencing performance on the new contract. However, because each contractual agreement is independent, the notification applies to the new contract only and does not relate back to establish bond act protection for earlier agreements for which the claimant failed to serve timely notice.

D
In the present case, plaintiff agreed to a new supply contract on March 30, 1993. Because this second contract represented plaintiff's decision to reenter the project after completely terminating its prior involvement, the second contract is independent of the first agreement. Therefore, by notifying the principal contractor within thirty days of supplying materials pursuant the March 30, 1993, contract, plaintiff perfected its bond act claim relative to materials supplied pursuant to this second contract. Accordingly, the trial court correctly granted summary disposition in plaintiff's favor on its claim under the payment bond.

III
Defendant INA further contends that, as Artco's surety, it cannot be liable to plaintiff where the trial court found no contract between plaintiff and Artco. However, INA waived this issue by failing to raise it *227 below. Swickard v. Wayne Co. Medical Examiner, 438 Mich. 536, 475 N.W.2d 304 (1991); Napier v. Jacobs, 429 Mich. 222, 227-228, 414 N.W.2d 862 (1987); McKelvie v. Mt. Clemens, 193 Mich.App. 81, 86, 483 N.W.2d 442 (1992). In any event, INA's claim is untenable because M.C.L. § 129.207; M.S.A. § 5.2321(7) specifically provides that, if the notice requirement is fulfilled, the surety is liable to claimants that lack a direct contractual relationship with the principal. See Pi-Con, Inc v. A.J. Anderson Constr. Co., supra.

IV
On cross appeal, plaintiff contends that the trial court erred in refusing to hold INA liable for time-price differential charges.[3] We disagree.
The March 30, 1993, contract between plaintiff and Moye provided that time-price differential charges would apply if Moye paid for the materials on credit. As a general rule, the surety under the bond act is liable to pay time-price differential service charges if such charges are integral to the underlying supply contract. Price Bros. Co. v. Charles J Rogers Constr. Co., 104 Mich.App. 369, 376-379, 304 N.W.2d 584 (1981); see also Price Bros. Co. v. Olin Constr. Co., Inc., 528 F.Supp. 716, 723 (W.D.N.Y., 1981); Erb Lumber Co. v. Homeowner Constr. Lien Recovery Fund, 206 Mich.App. 716, 721, 522 N.W.2d 917 (1994). Indeed, M.C.L. § 129.207; M.S.A. § 5.2321(7) entitles a claimant under the bond act to prosecute its suit for a judgment "for the amount, or the balance thereof, unpaid at the time of institution of the civil action, [and] prosecute such action to final judgment for the sum justly due him...."
However, in the present case, the $65,127.39 judgment plaintiff obtained against Moye did not include time-price differential damages. Further, "`[t]he liability of the sureties is coextensive with the liability of the principal in the bond, and can be extended no further than his.'" In re MacDonald Estate, 341 Mich. 382, 386, 67 N.W.2d 227 (1954), quoting Ward v. Tinkham, 65 Mich. 695, 703, 32 N.W. 901 (1887); see also Timmerman v. Hartford Accident & Indemnity Co., 243 Mich. 338, 342, 220 N.W. 752 (1928); Ackron Contracting Co. v. Oakland Co., 108 Mich.App. 767, 772, 310 N.W.2d 874 (1981). Accordingly, the trial court reached the correct result in ruling that under the circumstances of this case, plaintiff was not entitled to time-price differential damages.

V
Finally, plaintiff argues that the trial court committed error requiring reversal in dismissing its claims against Artco on the basis that plaintiff's losses will be fully satisfied by its judgment against INA. We agree. Although plaintiff may recover only one satisfaction of its losses, Stitt v. Mahaney, 403 Mich. 711, 725, 272 N.W.2d 526 (1978); Kaminski v. Newton, 176 Mich.App. 326, 328, 438 N.W.2d 915 (1989), it may pursue separate judgments against defendants that are jointly and severally liable to pay its damages. See MCR 2.206(A)(3); cf. Teodorescu v. Bushnell, Gage, Reizen & Byington (On Remand), 201 Mich.App. 260, 269, 506 N.W.2d 275 (1993); Verhoeks v. Gillivan, 244 Mich. 367, 371, 221 N.W. 287 (1928). Therefore, even if INA will fully reimburse plaintiff's losses by paying the judgment against it, plaintiff may still protect its interests by prosecuting its claims against each party that may be liable for its damages. Accordingly, we reverse the trial court's order dismissing plaintiff's claims against Artco.
Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.
NOTES
[1] The lower court agreed with Artco's assertion that it was not a party to the second contract. We express no opinion with regard to the correctness of this ruling. However, we reverse in total the summary disposition granted in favor of Artco and accordingly, on remand, all claims against Artco may be relitigated.
[2] Defendant INA does not contest the sufficiency of notice.
[3] A time-price differential charge is the difference between the cash and credit price, the latter being higher. Thelen v. Ducharme, 151 Mich.App. 441, 447, 390 N.W.2d 264 (1986); see Silver v. Int'l Paper Co., 35 Mich.App. 469, 470, 192 N.W.2d 535 (1971).