137 F.3d 427
 22 Employee Benefits Cas. 1036
 TRUSTEES FOR MICHIGAN LABORERS' HEALTH CARE FUND, Michigan
Laborers' VC Fund, Michigan Laborers' Training Fund, State
of Michigan Laborers' District Council Pension Fund, the
Industry Advancement Program of the Labor Relations Division
of the Associated General Contractors, Michigan Chapter, and
Joseph Kaczmarek, individually, Plaintiffs-Appellees,
v.
SEABOARD SURETY COMPANY, a New York insurance company, a New
Jersey corporation, Defendant-Appellant.
 No. 96-2241.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 1, 1997.
Decided Feb. 27, 1998.
 
 Steven F. Spender (argued and briefed), David A. Wecker (briefed), Spender & Robb, Flint, MI, for Plaintiffs-Appellees.
 Thomas D. Dyze (argued and briefed), Detroit, MI, for Defendant-Appellant.
 Before: NORRIS, SUHRHEINRICH, and CUDAHY, Circuit Judges.*
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiffs in this case are trustees of various pension funds, and an individual laborer, Joseph Kaczmarek. They brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to collect payment from a bond posted pursuant to the Michigan Public Works Act, Mich. Comp. Laws §§ 129.201-12 ("the Public Works Act"). The district court awarded summary judgment, which included attorney's fees, to plaintiffs. We now affirm.
 
 I.
 
 2
 This case arises out of the construction of a library at the University of Michigan's Flint campus. The university contracted with the Walbridge Aldinger Company, which purchased the payment bond at issue as part of the construction contract. Defendant Seaboard Surety Company issued the bond.
 
 
 3
 Walbridge then hired certain subcontractors, including defendant Warranty Builders, Inc.[1] Warranty failed to pay wages it owed to Kaczmarek and also did not make required fringe benefit contributions. These fringe benefits[2] were payable pursuant to a collective bargaining agreement between Local 175 of the Laborers' International Union of North America and Warranty.
 
 
 4
 The financial stakes on appeal are relatively low: $1,152.84 of unpaid wages to Kaczmarek; $1,314.42 of unpaid fringe benefits to the plaintiff trust funds; interest to Kaczmarek and the trust funds of $587.45; and, finally, $7,298.85 in attorney's fees. Seaboard does not appeal the amount paid in wages to Kaczmarek; it does contest all the other amounts awarded to plaintiffs.
 
 
 5
 The district court issued two memorandum opinions that are the subject of this appeal. The first granted summary judgment to plaintiffs on the merits. Trustees for Mich. Laborers' Health Care Fund v. Warranty Builders, Inc., 921 F.Supp. 471 (E.D.Mich.1996). The second awarded attorney's fees, interest, and costs.
 
 II.
 
 6
 We review the judgment of the district court de novo and apply the same test as the district court to determine whether summary judgment is appropriate. Bush v. Rauch, 38 F.3d 842, 846 (6th Cir.1994) (citing Deaton v. Montgomery County, Ohio, 989 F.2d 885, 887 (6th Cir.1993)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing the record to determine whether there is any genuine issue of material fact, the court resolves all ambiguities and inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).
 
 A. Preemption by ERISA
 
 7
 Before considering whether the district court granted the appropriate relief, we must first determine if the Public Works Act "relates to" an employee benefit plan and is therefore preempted by ERISA. See 29 U.S.C. § 1144(a). While the Supreme Court has recently reaffirmed its position that the preemption provision is "clearly expansive," California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, ----, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997) (quoting New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995)), it has declined to find pre-emption when the state law at issue has only "tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." New York State Conference, 514 U.S. at 661, 115 S.Ct. at 1679-80 (quoting District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992)). In the case before us, the district court declined to find ERISA preemption:
 
 
 8
 In reality, the Public Works Act is a statute of general applicability, which in this case will operate to compel defendant's payment of full compensation to the Plans' beneficiaries in the form of contributions due to the Plans under the terms of the beneficiaries' employment. This constitutes enforcement of the bonding contract only, not the Plans, and in no way interferes with the administration of the Plans.
 
 
 9
 Trustees for Mich. Laborers', 921 F.Supp. at 477. Looking to New York State Conference for guidance, the court went on to conclude:
 
 
 10
 The Michigan Public Works Act treats contributions due to an ERISA fund exactly as all other forms of compensation due a laborer or furnisher of materials on a public construction project. The statute does not interfere with nor require any administrative action of the Plans. It does not cause any additional expense to the Plans. To the extent that the statute operates to ensure payment of contributions to the Plans, it is incidental to its primary objective; in this case, to compel contractors on a public works project to pay their laborer's full compensation either directly or through a bond secured as provided by law. This law does not [a]ffect an ERISA plan in any meaningful way.
 
 
 11
 The Michigan Public Works Act is a statute of general applicability which causes the surety in this case to pay compensation as provided under the terms of its bonding contract. The statute neither "relates to" nor has a "connection with" an ERISA plan and plaintiffs' action to recover contribution payments from defendant's payment bond is not preempted by ERISA.
 
 
 12
 Id. at 479. We agree with this assessment, particularly in light of the Supreme Court's recognition that, although expansive, the ERISA pre-emption provision must be read to give meaning to its limiting language. New York Conference, 514 U.S. at 661, 115 S.Ct. at 1679-80; see also California Standards, 519 U.S. at ----, 117 S.Ct. at 843 ("as many a curbstone philosopher has observed, everything is related to everything else") (concurring opinion).
 
 
 13
 Accordingly, we affirm the district court's decision with respect to preemption for the reasons just stated as well as those outlined by the district court in its published opinion.
 
 B. Public Works Act
 
 14
 Although the Public Works Act is not preempted by ERISA, we must still decide whether plaintiff trustees can properly seek relief under the statute. The Public Works Act defines a "claimant" in the following terms:
 
 
 15
 A "claimant" means a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract. "Labor and material" includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.
 
 
 16
 Mich. Comp. Laws § 129.206. Seaboard contends that, given this definition, trust funds seeking unpaid fringe benefits are simply not claimants because they did not provide labor or materials to the project. At least one Michigan district court has adopted this narrow reading of the statute. Operating Eng'rs Local 324 v. Sentry Ins., 654 F.Supp. 191, 193 (E.D.Mich.1985).
 
 
 17
 However, as the district court recognized, the Public Works Act is modeled on the federal Miller Act, 40 U.S.C. § 270a et seq. Pi-Con v. A.J. Anderson Constr., 435 Mich. 375, 383, 458 N.W.2d 639 (1990). In a case pre-dating the enactment of ERISA but otherwise similar to the one now before us, the Supreme Court construed the Miller Act liberally to "effectuate its protective purposes." United States ex. rel Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 796-97, 1 L.Ed.2d 776 (1957). In Carter, the Court likened the trustees of the pension plan to assignees who could rightly sue on the payment bond:
 
 
 18
 Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment.... The trustees stand in the shoes of the employees and are entitled to enforce their rights.
 
 
 19
 Id. at 219-20, 77 S.Ct. at 798-99. The district court found this reasoning persuasive:
 
 
 20
 As the Michigan Supreme Court has in the past construed the state statute liberally and has relied upon the United States Supreme Court's analysis of the federal Miller Act, the Court finds that the Michigan Supreme Court would resolve the issues discussed herein consistent with Carter. Therefore, the Court holds that plaintiffs do have standing to sue under the state statute, to recover as compensation "justly due," unpaid fringe benefit contributions owed pursuant to contract between the contractor and its union employees.
 
 
 21
 Trustees for Mich. Laborers', 921 F.Supp. at 475. Despite the arguments advanced by Seaboard, we find nothing to indicate that the district court erred in its assumption that the Michigan Supreme Court would, if faced with a case similar to the one now before us, construe the Public Works Act to exclude the relief awarded to plaintiff trustees. Accordingly, we affirm that aspect of the district court's judgment.
 
 C. Attorney's Fees
 
 22
 Finally, we turn to the district court's award of attorney's fees, costs, and interest to plaintiffs. In reaching that conclusion, the court looked to the terms of the collective bargaining agreement between the union and Warranty, which explicitly provided for attorney's fees and costs for the cost of litigation to collect monies due under the CBA:
 
 
 23
 If the Employer fails to make Fringe Benefit Contributions, or to pay wages, or correct overtime rates, in accordance with this Agreement, the Union, after giving the Employer and the Association ... notice, ... shall have the right to take economic action against such Employer.... The Employer agrees to pay all reasonable attorney fees, service charges and court costs necessary to effect an examination of his books or cost of litigation necessary for the collection of monies due as a result of such examination.
 
 
 24
 The district court construed this language to mean that, "pursuant to the CBA, Warranty Builders is required to pay for plaintiffs' attorney fees and costs of litigation and collection of the unpaid contributions and wages." The payment bond itself provides: "The Contractor and the Surety, jointly and severally, bind themselves ... to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract...."
 
 
 25
 The district court concluded that the provisions just quoted from the CBA and payment bond mean the following:
 
 
 26
 The contractor, Warranty Builders, is expressly liable for the fees and costs of collection of sums due for labor performed under the CBA. This contractual provision is in consideration for the performance of labor. Thus, payment of any costs and fees incurred in collection of sums due for labor performed under the contract is itself compensation for labor furnished in performance of the construction contract.
 
 
 27
 Although it disagrees that attorney's fees are justified in this case, even Seaboard concedes that the district court's reasoning "may be applicable under certain circumstances." Given the explicit provisions of the CBA, as well as our affirmance of the district court's rather broad construction of "sums justly due" under the Public Works Act, we believe that attorney's fees are appropriate given the facts before us.
 
 III.
 
 28
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 The district court entered a default judgment against Warranty, which was not challenged. Warranty is not a party to this appeal
 
 
 [2]
 These included pension, vacation, and health care benefits